■ JILLMARIE SICILIANO, Appellant, v HENRY MODELL & COMPANY, INC., Respondent. [925 NYS2d 80]—

Order, Supreme Court, Bronx County (Norma Ruiz, J.), entered December 15, 2009, which granted defendant's motion for summary judgment dismissing the complaint, reversed, on the law, without costs, and the motion denied.

Plaintiff testified that she was injured on July 8, 2005, when, exiting a store owned by defendant, she was struck on the left temple by a metal box affixed to the outer door. Plaintiff stated that as she proceeded to the exit she went through a set of doors into a vestibule. As she was about to go through the outer set of doors, the man in front of her let go of the door. Plaintiff testified that the door "swung back too fast" for her to stop with her hand and that she was "smashed" on the left side of her head by the metal lock box on the door. Her boyfriend, who

witnessed the incident, testified that the door "swung open and just jerked right back as if it didn't open all the way."

The store manager, Julio Salazar, testified that what he referred to as the "lock box" had been present on the door since the time he began working at the store, in November 2004. He speculated that the box was a lock box because it "had a hole through the door," but stated that it was not functional at the time of plaintiff's accident. The box was eventually removed, after it was hit by a fixture being moved into the store. Salazar testified that the door had a weighted arm at the top that controlled the speed of the door and prevented the door from closing too quickly. The door also had a "storm chain," the purpose of which was to limit the extent to which the door could open.

After plaintiff reported the accident, the store manager asked her to show him what had happened. Salazar testified that he "pushed" the door many times, witnessed customers walking in and out, and thus concluded that "nothing was wrong with the door," including its opening and closing speed.

Defendant moved for summary judgment dismissing the complaint, arguing that it did not create, nor did it have actual or constructive notice of, any dangerous or defective condition of the door. Plaintiff opposed the motion, asserting that defendant had not established prima facie its entitlement to summary judgment, and, in any event, that she had raised an issue of fact sufficient to defeat the motion. Plaintiff contended that both the storm chain and the protruding metal box on the door were dangerous conditions, violative of applicable codes and reference standards, and not in accordance with good and accepted industry practice.

Plaintiff relied, inter alia, on an affidavit by Vincent A. Ettari, a licensed professional engineer who inspected the premises and reviewed the relevant testimony and pleadings. Ettari opined that the chain, by limiting the travel of the door, diminished the width of the exit passage to less than was required by the 1961 New York State Building Construction Code and the New York State Uniform Fire Prevention and Building Code. Ettari explained that since the chain prevented the door from opening through the full arc as required, the door closed more quickly than it should have. In addition, the chain served as a "snap back mechanism," causing the door to close more quickly. Ettari explained that exiting patrons would push harder against the door and the chain when the door failed to open fully.

Ettari opined that the presence of the metal box, which he characterized as a "protruding object," was a clear violation of

Reference Standard CABO/ANSI A117.1-1992, which provides that "protruding objects" are not permitted to reduce the clear width of an accessible route.

As to the "testing" of the subject door performed by defendant's store manager, Ettari stated that there was nothing in the record to suggest that the manager was aware of the relevant standards for door closing speed and nothing in the record to indicate how the door was tested beyond the assistant manager's vague testimony. Ettari noted that in order to comply with the applicable standard, CABO/ANSI A117.1-1992, a closing door must take at least five seconds to go from being open 90 degrees to being open 12 degrees, and that it was insufficient for the untrained store manager to simply "eyeball" the door and conclude that it was functioning properly.

Ettari opined, with a reasonable degree of engineering certainty, that the multiple code violations were the proximate cause of plaintiff's accident and resulting injuries.

The motion court found that defendant had met its initial burden of demonstrating that it did not have notice of the defective condition of the door and did not cause or create the condition, and that plaintiff in turn had failed to raise an issue of fact, because Ettari's opinion was "speculative" and unsupported by any evidentiary foundation. We now reverse.

Defendant failed to establish prima facie that the condition of the door was not dangerous or defective. Salazar's test of closing speed was limited to pushing the door many times and "looking that the door was not coming back fast." Salazar did not indicate how far he opened the door, nor did he define "too fast." Defendant did not identify any applicable code or industry standard relevant to Salazar's determination of door closing speed. Defendant offered no expert analysis, relying instead on the testimony of the manager, who merely observed the door and concluded that it was functioning properly.

Assuming, arguendo, that defendant met its burden, plaintiff's evidence was sufficient to raise a triable issue of fact. The presence of a metal box at eye level on the exit door, in conjunction with the fast closing of the door, is enough to permit a trier of fact to conclude that defendant was negligent under the common law (*see Salvador v New York Botanical Garden*, 74 AD3d 540 [2010]).

The motion court improperly disregarded the affidavit by plaintiff's expert engineer. The engineer's opinions were based on facts in evidence and facts reasonably inferable from the evidence. The presence on the exit door of the protruding metal box, at eye level, was undisputed. The presence of the box, alone,

on the exit door, was arguably dangerous. It was reasonably inferable from the evidence that the box diminished the width of the door opening. It was also reasonably inferable from the evidence that the door was prevented from opening fully due to the presence of the storm chain. The engineer explained that the storm chain decreased the arc of the door and acted as a "snap back" mechanism, resulting in a faster than permissible closing time. The testimony of plaintiff's boyfriend that he observed the door "jerk" back supports the expert's opinion. The motion court faulted the expert for failing to inspect the door himself. However, the box had been removed from the door and ownership of the premises had changed in the interim, and the expert stated that he had inspected the premises and that he had examined photos of the doorway taken shortly after the accident. The expert's testimony concerning how to measure door closing speed should have been analyzed in the context in which it was offered, namely, to demonstrate that the store manager's assessment, based on "eyeballing" the door, is of limited probative value. Concur—Acosta, Renwick and Manzanet-Daniels, JJ.

Tom, J.P., and Sweeny, J., dissent in a memorandum by Sweeny, J., as follows: The complaint alleges that on July 8, 2005, plaintiff sustained injuries when she was struck in the head by a door as she was exiting a store owned and operated by defendant. Plaintiff claims that defendant failed to properly maintain the door in a safe condition and that the door was defective. Her bill of particulars alleges that the exit door of defendant's premises was defective in that a metal box/alarm box attached thereto was positioned at or near head level, the door's opening and closing mechanism was not working properly, and the door closed rapidly without warning.

On its motion for summary judgment, defendant submitted evidence showing that it did not have notice of the allegedly dangerous condition of the door and that it maintained the door in a reasonably safe condition. At his deposition, the store's assistant manager testified that he worked at that store from November 2004 until May 2007 and that he was working on the day of the incident. He stated that he inspected the door in question on a daily basis to see that it was working properly. He also stated that he looked at the alarm box on the exit door during those inspections. He further testified that the door in question had not been repaired since he began working at the store and that he had received no complaints about the door before this incident (see Hunter v Riverview Towers, 5 AD3d 249 [2004]). When plaintiff informed him that she was struck by the

door, he tested the door immediately following the accident by pushing the door repeatedly and detected no problems. He also watched the door as customers were walking in and out, and determined that nothing was wrong with it. He testified that he checked the closing speed of the door and concluded that the speed was correct and that the door was not swinging back too fast. According to this witness, the "storm chain" on the door did not interfere with the opening width of the door or its closing speed. Thus, defendant established prima facie its entitlement to summary judgment.

In opposition, plaintiff failed to raise a triable issue of fact. The affidavit by her expert, who opined, inter alia, that the door closed too rapidly, was not sufficient to defeat the motion. The expert concluded that, based upon the store manager's deposition and photographs, the door did not comply with New York State Building Code. He also opined that the storm chain and the box on the door reduced the width of the passage through the door, thus causing the door to close too rapidly when opened. In response, defendant submitted an affidavit by the same assistant store manager, clarifying his prior testimony and stating that the storm chain did not prevent the door from opening at its full width but rather was there to prevent the door from striking the plate glass display window when opened during a storm. He also stated again that there were no complaints regarding the door before this incident.

Contrary to the majority's view, plaintiff's expert's opinion was speculative and unsupported by any evidentiary foundation (*see Parris v Port of N.Y. Auth.*, 47 AD3d 460, 461 [2008]). The expert's conclusion that the door closed too rapidly was not based on either a personal inspection or any scientific tests, although the expert himself claimed that scientific tests were necessary to detect any defects in the door (*see Diaz v New York Downtown Hosp.*, 99 NY2d 542, 544-545 [2002]; *Santiago v United Artists Communications*, 263 AD2d 407 [1999]). Moreover, the expert could not state the dimensions of the box attached to the door. The failure to conduct an inspection of the door, coupled with the lack of evidence concerning whether there were any complaints about the door or the box attached to the door at any time, precludes plaintiff's evidence from raising a triable issue of fact whether defendant had notice of a dangerous condition. Plaintiff's argument that the location of the box created an inherently dangerous condition is unconvincing, since she claims that the speed of the door, not the box attached to the door, was the proximate cause of her injuries.

As a result, the motion court correctly granted defendant's

motion for summary judgment and properly dismissed the complaint.