| |
|---|
| **Pettinato v EQR-Rivertower, LLC** |
| 2025 NY Slip Op 30705(U) |
| March 3, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 159909/2016 |
| Judge: Francis A. Kahn III |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    **HON. FRANCIS A. KAHN, III**      PART      **32**

*Justice*

------------------------------------------------------------X

LAURA PETTINATO, DUSTIN FISHLER,

                Plaintiff,

            - v -

EQR-RIVERTOWER, LLC,EQR-RIVERTOWER A, LLC,EQR-RIVERTOWER B, LLC,EQR-RIVERTOWER C, LLC,EQR-RIVERTOWER D, LLC,EQR-RIVERTOWER E, LLC,RIVER TOWER OWNER, LLC,OLDCASTLE BUILDINGENVELOPE, INC.

                Defendant.

------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 159909/2016 |
| MOTION DATE | |
| MOTION SEQ. NO. | 008 009 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 008) 463, 464, 465, 466, 467, 468, 469, 470, 471, 472, 473, 474, 475, 476, 477, 478, 479, 480, 481, 482, 483, 484, 485, 486, 487, 488, 489, 490, 491, 492, 493, 494, 495, 496, 497, 518, 519, 522, 524, 525, 526, 527, 528, 529, 530, 531, 532, 547, 548

were read on this motion to/for          JUDGMENT - SUMMARY     .

The following e-filed documents, listed by NYSCEF document number (Motion 009) 498, 499, 500, 501, 502, 503, 504, 505, 506, 507, 508, 509, 510, 511, 512, 513, 514, 515, 516, 517, 520, 523, 533, 534, 535, 536, 537, 538, 539, 540, 541, 542, 543, 544, 545, 546, 549, 550, 551

were read on this motion to/for       SUMMARY JUDGMENT(AFTER JOINDER    .

      Upon the foregoing documents, the motions are determined as follows:

      This action arises out an incident that occurred on March 16, 2016, in the bathroom within the apartment located at 420 East 54th Street, Apt. 12G, New York, New York. The premises where the unit is located is a large residential apartment building containing approximately 378 units and Plaintiffs were the lessees. At the time, the subject bathroom was improved by a combination bathtub and shower which was enclosed with glass doors that ran along a track. Plaintiff Laura Pettinato ("Pettinato") took up residence in the apartment with her husband, Dustin Fishler ("Fishler"), in July 2008 and used the shower almost daily without occurrence until the incident. Pettinato asserts she was injured when she fell stepping out of the bathtub/shower and cut her genitals on the shower door track. Plaintiffs acknowledge that the shower door track was unchanged from their initial occupancy until the incident. Pettinato testified at her deposition that prior to the accident she never complained to building management about the shower track but called for service of a clogged drain in the tub and a "stuffed" toilet. Immediately prior to her fall, Pettinato reported she felt faintish, attempted to exit the tub and her left foot slipped. Fishler reported he found Pettinato unconscious on the bathroom floor, removed her to the bedroom and performed CPR until EMT personnel arrived.

159909/2016 PETTINATO, LAURA vs. EQR-RIVERTOWER, LLC
Motion No. 008 009

Page 1 of 6

[* 1]

When the incident happened, Defendant River Tower Owner, LLC ("River Tower") owned the building where Plaintiff's apartment was located. River Tower acquired the building by deed dated January 28, 2016, forty-eight [48] days prior to the incident, from Defendants EQR-Rivertower, LLC, EQR-Rivertower A, LLC, EQR-Rivertower B, LLC, EQR-Rivertower C, LLC, EQR-Rivertower D, LLC and EQR-Rivertower E, LLC ("EQR"). The contract of sale for the premises between River Tower and EQR was dated October 30, 2015.

In the amended complaint, Plaintiff pled, *inter alia*, multiple causes of action based in common-law negligence against River Tower and EQR. Plaintiffs allege the tub surface was negligently slippery and that the shower door track was in a dangerously sharp condition. Defendant River Tower answered and pled three affirmative defenses as well as a crossclaim for common-law contribution against EQR. Defendants EQR answered and pled ten affirmative defenses as well as crossclaims against all the other Defendants for common-law indemnification and contribution, contractual indemnification and for breach of contract for failure to obtain insurance. The action was discontinued as against Defendant Oldcastle Building Envelope, Inc. All Defendants answered the various crossclaims.

Thereafter, Defendant EQR moved to dismiss Plaintiff's complaint and all crossclaims pursuant to CPLR §3211[a][7], as well as for summary judgment under CPLR §3212, upon the argument it was not the owner at the time of the incident. Plaintiff and Defendant River Tower opposed the motion. By order dated September 19, 2019, Justice Arlene Bluth denied EQR's motion in its entirety. Justice Bluth held that "there is an issue of fact with respect to whether River Tower had a reasonable time to inspect and discover the alleged dangerous condition (the sharp shower/worn bathtub track). The Court is unable to find as a matter of law that less than two months was enough time for River Tower". Justice Bluth also rejected the claim that an "as is" clause in the contract of sale insulated EQR from liability for the accident. Resultantly, the branch of EQR's motion to dismiss River Tower's crossclaims for indemnification and/or contribution was also denied.

Now, Defendants EQR again moves pursuant to CPLR §§3211 and 3212 (Mot Seq No 8) for summary judgment dismissing Plaintiff's complaint and River Tower's crossclaims. EQR also seeks summary judgment on its indemnification crossclaim. Defendant River Tower moves pursuant to CPLR §3212 (Mot Seq No 9) for summary judgment dismissing Plaintiff's complaint and EQR's crossclaims. Plaintiff opposes both motions. Defendant River Tower partially opposed EQR's motion.

A party moving for summary judgment must establish, in the first instance, entitlement to judgment as a matter of law by tendering sufficient evidence in evidentiary form which eliminates any material issues of fact (*see Alvarez v Prospect Hospital*, 68 NY2d 320 [1986]; *Zuckerman v City of New York*, 49 NY2d 557 [1980]). Failure to make a *prima facie* case requires denial of the motion regardless of the sufficiency of the opposition papers (*see Alvarez v Prospect Hospital*, supra at 324; *see also Smalls v AJI Industries, Inc.*, 10 NY3d 733, 735 [2008]). If the movant meets its requirement, the burden shifts to the opposing party to establish the existence of a triable issue of fact (*see Alvarez v Prospect Hosp., supra; Zuckerman v City of New York, supra*).

EQR's summary judgment motion is successive to its prior motion which was denied upon a determination that an "issue of fact" existed as to whether "less than two months" was enough time for River Tower to "inspect and discover" the defect at issue. Although second motions for accelerated judgment are disfavored, where, as here, the "first motion, made before discovery, is denied on the ground of the existence of a factual issue which, through later uncovering of the facts, is resolved or eliminated" the motion can be entertained (*see Pough v Aegis Property Services Corp.*, 186 AD2d 52,

159909/2016 PETTINATO, LAURA vs. EQR-RIVERTOWER, LLC
Motion No. 008 009

Page 2 of 6

53 [1st Dept 1992], *citing Freeze Right Refrigerator & Air Conditioning Svcs v City of New York*, 101 AD2d 175, 181 [1st Dept 1992]).

"[A] landowner is under a duty to maintain its property in a reasonably safe condition under the existing circumstances, which include the likelihood of injury to a third party, the potential that such an injury would be of a serious nature, and the burden of avoiding the risk," (*Smith v Costco Wholesale Corp.*, 50 AD3d 499 [1st Dept 2008] *citing Basso v Miller*, 40 NY2d 233, 241 [1976]). That duty, and by extension liability for negligence, is premised upon the landholder's exercise of occupancy, ownership, control or a special use of such premises since "the person in possession and control of property is best able to identify and prevent any harm to others" (*see Butler v Rafferty*, 100 NY2d 265, 270 [2003]; *see also Basso v Miller*, 40 NY2d 233 [1976]). "Thus, '[a] property owner is subject to liability for a defective condition on its premises if a plaintiff demonstrates that the owner either created the alleged defect or had actual or constructive notice of it'" (*Doherty v 730 Fifth Upper, LLC*, 227 AD3d 606, 607 [1st Dept 2024], *quoting Singh v United Cerebral Palsy of N.Y. City, Inc.*, 72 AD3d 272, 275 [1st Dept 2010]). However, "a landlord is not liable to a tenant for dangerous conditions on the leased premises, unless a duty to repair the premises is imposed by statute, by regulation or by contract" (*Rivera v Nelson Realty, LLC*, 7 NY3d 530, 543 [2006]). In New York, that duty is established under Multiple Dwelling Law §78[1] which requires the owners of such buildings "be kept in good repair". New York City landlords are further charged under the Administrative Code with the responsibility for safe maintenance of their buildings and facilities (*see* NYC Administrative Code §§ 27-127, 27-128).

To sustain its burden on a motion to dismiss a premises liability cause of action, a property owner is required to demonstrate, as a matter of law, that one or more of these essential elements are negated as a matter of law (*see eg Rodriguez v Kwik Realty, LLC*, 216 A.D.3d 477 [1st Dept 2023]; *Poon v Nisanov*, 162 AD3d 804 [2d Dept 2018]). For instance, "[i]n the absence of duty, there is no breach and without a breach there is no liability" (*Pulka v Edelman*, 40 NY2d 781, 782 [1976]). The primary argument posited by EQR Defendants is that since it is undisputed they did not own the premises on the day of the incident, they owed no duty to Plaintiff.

Typically, a landowner's liability for the condition of real estate ceases when possession and control is transferred (*see Pharm v Lituchy*, 283 NY 130, 132 [1940]). "A narrow exception exists, however, and liability may be imposed where a dangerous condition existed at the time of the conveyance and the new owner has not had a reasonable time to discover the condition, if it was unknown, and to remedy the condition once it is known" (*Bittrolff v Ho's Dev. Corp.*, 77 NY2d 896, 898 [1991]; *see also Davis v Angioletti*, 215 AD3d 552 [1st Dept 2023]). "The nature of the condition, the manner in which the buyer uses the land, and the time elapsed are all to be considered in determining whether the buyer had reasonable opportunity and the seller's responsibility had, therefore, ended" (1A PJI3d 2:108 at 758 [2025]). Regarding the nature of the condition, "[a] very latent defect, not likely to be discovered in the course of normal inspection or use of the land, may make the vendor liable for a considerable length of time after he surrenders possession, whereas a somewhat more obvious one, which might reasonably be expected to be discovered in the course of normal use, would make him liable only for a shorter time" (Restatement, [Second] of Torts §353, Comment g). As to the use of the premises, "[o]ne who occupies land as his dwelling may reasonably be expected to discover conditions of which he might reasonably remain unaware if the land were allowed to remain vacant" (*id.*).

Here, EQR's argument on this point in the prior motion was based exclusively on the passage of time between transference of title and the date of the accident. Since issuance of the decision on the prior motion, the parties engaged in significant discovery and EQR's present motion is founded on

159909/2016 PETTINATO, LAURA vs. EQR-RIVERTOWER, LLC
Motion No. 008 009

Page 3 of 6

[* 3]

deposition testimony and documents marshaled in discovery. This evidence demonstrated that River Tower, through its agents, was granted repeated and extensive access to the subject building, as well as the multiple units therein, for some four months prior to the sale. These inspections included access given to an architect and engineer retained by River Tower. Steve Figari and Michael Zampetti, employees of River Tower's parent company, testified regarding their access prior to closing. Zampetti acknowledged he visited the building more than twenty times prior to the closing and that other representatives toured the property on more than forty occasions. Figari admitted visiting the property some twenty-five times before the sale and that he accessed vacant units on each occasion. Jeremiah Thorpe ("Thorpe"), a Regional Manager for the EQR Defendants, whose responsibilities included overseeing the building at issue, denied knowledge of any complaints concerning slipperiness of the tubs or sharpness of the shower door rails prior to the accident. But Thorpe acknowledged that EQR never inspected the "suitability" of the shower door and tracks.

In an affidavit submitted in this action by Pettinato, dated January 27, 2020, she averred that prior to the sale and the accident, a representative of River Tower and an engineer inspected her apartment, including the bathroom, in detail. She averred that the examination of the unit included taking photographs as well as video and that similar inspections were performed of the apartments of her "friends and neighbors in the building". As to the existence of the alleged condition, Plaintiff testified that it was present when her occupancy began in 2008 but admitted that she never complained to EQR regarding the condition of the shower door track.

Although this new evidence might constitute sufficient proof to support that River Tower could have discovered the purported condition through the pre-closing inspections of the apartments, including Plaintiff's unit (*see eg Privette v Precision El.*, 143 AD3d 639, 640 [1st Dept 2016]; *Brazell v Wells Fargo Home Mtge., Inc.*, 42 AD3d 409 [1st Dept 2007]), EQR proffered nothing to support its assertion that adequate time to remedy the condition existed (*see Farragher v New York*, 26 AD2d 494 [1st Dept 1966], *affd on opn below* 21 NY2d 756 [1968]; *Moyse v Wagner*, 66 AD3d 976, 977 [2d Dept 2009] *Brown v O'Connor*, 193 AD2d 1088 [4th Dept 1993]; *Young v Hanson*, 179 AD2d 978 [3d Dept 1992]). Despite the access granted to River Tower during the escrow period, there is no indication from the contract or the testimony that while the contract vendee River Tower was authorized to perform pre-closing repairs on Plaintiff's unit, much less the other 377 apartments in the building.

Any argument regarding the claimed preclusive effect of the "as is" language in the sales agreement is unavailing. "Under New York law an 'as is' clause in a contract is interpreted to bar only actions based upon breach of warranty" (*International Clinical Laboratories, Inc. v Stevens*, 710 F Supp 466, 469 [EDNY 1989]). Therefore, "'[a]s is' clauses are intended to negative the existence of any representations by the seller as to the particular condition, fitness, type of construction, etc., of the premises sold" (*Approved Properties, Inc. v. New York*, 52 Misc. 2d 956 [Sup Ct Rich. Cty 1966]). Here, there is nothing to indicate that the parties intended that provision to absolve EQR from any potential negligent conduct of its own (*see generally Sweeney v Hertz Corp*, 292 AD2d 286 [1st Dept 2002]). Indeed, it should be noted that no new or different evidence was submitted which would contradict Justice Bluth's holding that the contract language does not "unmistakably state that EQR was purporting to contract away its own negligence".

Accordingly, the branch of Defendant EQR's motion for summary judgment dismissing Plaintiff's complaint is denied.

159909/2016 PETTINATO, LAURA vs. EQR-RIVERTOWER, LLC
Motion No. 008 009

Page 4 of 6

Defendant River Tower posits that it is due dismissal of Plaintiff's complaint since "there is no credible evidence of any actionable defect of either the shower door track or of the bathtub". It also claims that irrespective of the existence of an actionable defect, "Plaintiff's medical emergency was a superseding, intervening cause" of her accident. "[W]hether a dangerous or defective condition exists on the property of another so as to create liability depends on the peculiar facts and circumstances of each case' and is generally a question of fact for the jury" (*Trincere v County of Suffolk*, 90 NY2d 976, 977 [1997][citations and quotations omitted]). Nevertheless, "[s]ummary judgment in favor of a defendant is appropriate where a plaintiff fails to submit any evidence that a particular condition is actually defective or dangerous" (*Lezama v 34-15 Parsons Blvd, LLC*, 16 AD3d 560 [2d Dept 2005]). On this motion, it is of course Defendant's burden to show *prima facie* that the alleged defect is not actionable (*see eg Hunter v Riverview Towers, Inc.*, 5 AD3d 249 [1st Dept 2004]).

Here, Defendant River Tower pointed to Plaintiffs' extended use of the shower without difficulty and Pettinato's neglect to lodge a complaint about the shower with EQR during her occupancy. Absent, however, was any expert analysis that the shower door track was not defective and complied with applicable building codes (*see Lugo v Belmont Blvd. Hous. Dev. Fund Co., Inc.*, 157 AD3d 559 [1st Dept 2018]). Reliance on this type of generalized testimony is insufficient to meet Defendant's burden in the first instance (*see Dan v City of New York*, 227 AD3d 495 [1st Dept 2024]). Further, evaluation of the credibility of the evidence is not, under the circumstances, a court's function on a motion for summary judgment (*see eg Ferrante v American Lung Assn.*, 90 NY2d 623, 631 [1997]). Even were a *prima facie* case made, the affidavit of Plaintiff's professional engineer regarding the condition of the shower would raise an issue of fact (*see Siciliano v Henry Modell & Co., Inc.*, 85 AD3d 534 [1st Dept 2011]).

Concerning causation, a "plaintiff must generally show that the defendant's negligence was a substantial cause of the events which produced the injury" by a preponderance of the evidence (*Derdiarian v Felix Contractor Corp.*, 51 NY2d 308, 315 [1980]). However, the mere existence of an exculpatory cause of a plaintiff's injuries is not, in and of itself, fatal since "there may be more than one proximate cause of an injury" (*Argentina v Emery World Wide Delivery Corp.*, 93 NY2d 554, 560 n2 [1999]; *see also Mazella v Beals*, 27 NY3d 694, 706 [2016]; *Galioto v Lakeside Hospital*, 123 AD2d 421, 422 [2d Dept 1986]["in order for a plaintiff to recover damages, a defendant's negligence need not be the sole cause of the injury; it need only have been a substantial factor in bringing the injury about"]). In this case, River Tower need not have foreseen that a tenant might become dizzy or faint while using the shower, rather the trier of fact could conclude the "foreseeable, normal and natural result" of the shower floor and door track created the risk at issue (*see Delaney v First Concourse Mgmt. Co.*, 275 AD2d 233 [1st Dept 2000]; *see also Clindinin v New York City Hous. Auth.*, 117 AD3d 628 [1st Dept 2014]).

Accordingly, the branch of Defendant River Tower's motion for summary judgment dismissing Plaintiff's complaint is denied.

Regarding the branches of Defendants' motions related to their cross-claims, common-law indemnification cannot be obtained "unless [the putative indemnitee] has been held to be vicariously liable without proof of any negligence or actual supervision on its own part" (*McCarthy v Turner Constr., Inc.*, 17 NY3d 369, 377-378 [2011]; *Broyhill Furniture Indus., Inc. v Hudson Furniture Galleries, LLC*, 61 AD3d 554, 556 [1st Dept 2009]). Based on the foregoing determinations of the Court, neither party demonstrated an absence of negligence on their part.

Accordingly, it is

159909/2016 PETTINATO, LAURA vs. EQR-RIVERTOWER, LLC
Motion No. 008 009

Page 5 of 6

ORDERED that the motions by Defendants EQR and River Tower (Mot Seq No 8 and 9) are denied.

| 3/3/2025 | | |
|---|---|---|
| DATE | | FRANCIS A. KAHN, III, A.J.S.C. |

HON. FRANCIS A. KAHN III
J.S.C.

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION |
|---|---|---|
| | ☐ GRANTED ☒ DENIED | ☐ GRANTED IN PART ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT ☐ REFERENCE |

159909/2016   PETTINATO, LAURA vs. EQR-RIVERTOWER, LLC
Motion No.  008 009

Page 6 of 6

6 of 6