■ BROYHILL FURNITURE INDUSTRIES, INC., Plaintiff, v HUDSON FURNITURE GALLERIES, LLC, et al., Respondents, and HUDSON UNITED BANK, Appellant. [877 NYS2d 72]—

Order, Supreme Court, New York County (Herman Cahn, J.), entered March 7, 2008, which, inter alia, granted the motion of defendants Hudson Furniture Galleries, LLC (HFG), Edward Rosenfeld and Michael D. Rosenfeld (the Rosenfelds, and together with HFG, respondents) for summary judgment dismissing the cross claims of defendant TD Bank, N.A., formerly known as TD Banknorth, N.A., successor-by-merger to Hudson United Bank (TD Bank) against respondents, and denied the cross motion of TD Bank for summary judgment against respondents, unanimously affirmed, with costs.

This action arose out of a series of secured loan transactions between plaintiff Broyhill Furniture Industries, Inc., a furniture manufacturer, and HFG, a retail furniture business owned, operated and managed by the Rosenfelds, on the one hand, and between HFG and TD Bank, on the other. The transactions resulted in Broyhill and TD Bank obtaining security interests in the same collateral. When Broyhill amended its complaint against respondents to name TD Bank as a defendant and TD Bank filed cross claims against respondents, the motion and

cross motion at issue ensued. Broyhill's cause of action against TD Bank sought a declaratory judgment as to the priority of their respective security interests and to recover monies paid to TD Bank by respondents, alleging that such sums were subject to its superior security interest. TD Bank's cross claims against respondents sounded in, inter alia, unjust enrichment and indemnification. TD Bank had recently resolved its own action against respondents by written settlement agreement/general release nine months prior to the amended complaint in this action.

"As with contracts generally, the courts must look to the language of a release—the words used by the parties—to determine their intent, resorting to extrinsic evidence only when the court concludes as a matter of law that the contract is ambiguous" (*Wells v Shearson Lehman/American Express*, 72 NY2d 11, 19 [1988]). "The scope of a general release depends on the controversy being settled and the purpose for which the release is actually given" (*Commissioners of State Ins. Fund v Fortune Interior Dismantling Corp.*, 7 AD3d 427, 428 [2004]). However, "if from the recitals therein or otherwise, it appears that the release is to be limited to only particular claims, demands or obligations, the instrument will be operative as to those matters alone" (*Kaminsky v Gamache*, 298 AD2d 361, 361 [2002] [internal quotation marks and citations omitted]).

The clear, expansive language of section 9 of the settlement agreement/general release at issue plainly indicates that it was intended as a complete accord and satisfaction between TD Bank and respondents regarding the subject secured loan transactions, barring any claim that either of them might ever conceivably have arising therefrom. As the Court of Appeals has stated, "words of general release are clearly operative not only as to all controversies and causes of action between the releasor and releasees which had, by that time, actually ripened into litigation, but to all such issues which *might* then have been adjudicated as a result of pre-existent controversies" (*Lucio v Curran*, 2 NY2d 157, 161-162 [1956]).

Consequently, based on the undisputed evidence that TD Bank was aware of the Broyhill lawsuit, including its claim for fraudulent conveyances and TD Bank's corresponding potential liability, TD Bank, at a minimum, should have preserved its rights by including appropriate limiting language in the settlement agreement. In the absence of such language, respondents are entitled to relief from all liability pertaining to the loan documents. The mere fact that TD Bank had not been named as a party in the Broyhill lawsuit at that time does not avail TD Bank.

The motion court correctly granted summary judgment dismissal of TD Bank's cross claims. In the absence of an express agreement to indemnify, an obligation to indemnify may be implied to prevent unjust enrichment (*Rosado v Proctor & Schwartz*, 66 NY2d 21, 23-24 [1985]). "[S]ince the predicate of common-law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee, it follows that a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine" (*Trump Vil. Section 3 v New York State Hous. Fin. Agency*, 307 AD2d 891, 895 [2003], *lv denied* 1 NY3d 504 [2003]). Nonetheless, "an indemnity cause of action can be sustained only if the third-party plaintiff and the third-party defendant have breached a duty to plaintiff and also if some duty to indemnify exists between them" (*Rosado v Proctor & Schwartz* at 24).

Applying these principles, TD Bank cannot claim that its liability to Broyhill, if any, is purely vicarious, since it left its interests exposed when it failed to timely re-file its financing statement after it learned of the HFG name change. Moreover, a review of TD Bank's cross claims and cross motion for summary judgment indicates that it failed to allege that respondents owed a duty to Broyhill. Of course, to the extent TD Bank argues that respondents have a duty to them, based on their "contractual obligations to repay TD Bank pursuant to the Loan Documents," that argument fails as respondents' obligations under the loan documents were satisfied by the settlement agreement (*see* General Obligations Law § 15-501 [1]). Hence, there is no legal basis for TD Bank's claim that its disgorgement of funds to Broyhill somehow reinstates respondents' obligations under the loan documents. Concur—Friedman, J.P., Sweeny, Catterson, Renwick and Freedman, JJ. [*See* 2008 NY Slip Op 30636(U).]