Smith v City of New York (2025 NY Slip Op 01198)

Smith v City of New York

2025 NY Slip Op 01198

Decided on March 04, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: March 04, 2025

Before: Moulton, J.P., Friedman, Mendez, Shulman, Rodriguez, JJ. 

Index No. 807276/21|Appeal No. 2964|Case No. 2023-03450|

[*1]Johnte Smith, Plaintiff-Respondent,
v
City of New York, et al., Defendants-Appellants, Police Officer John Doe et al., Defendants.

Sylvia O. Hinds-Radix, Corporation Counsel, New York (Amy McCamphill of counsel), for appellants.
Pollack, Pollack, Isaac & DeCicco, LLP, New York (Brian J. Isaac of counsel), for respondent.

Order, Supreme Court, Bronx County (Mitchell J. Danziger, J.), entered April 14, 2023, which, to the extent appealed from as limited by the briefs, denied defendants City of New York and New York City Police Department's (the City) motion for summary judgment dismissing the complaint, reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment accordingly.
In 2021, plaintiff commenced two comparable actions against the City in Supreme Court, Bronx County and the same attorney represented plaintiff in both actions. Among his various claims, plaintiff challenged two separate arrests which occurred within 14 days of each other and in the same vicinity. About a year later, plaintiff (as a coplaintiff) settled one of these actions based on the later-in-time arrest (Action 2) and executed a general release as part of the settlement. The operative terms of the general release specifically released the City "from any and all state and federal tort claims, causes of action, suits, occurrences, and damages, whatsoever, known or unknown," which plaintiff "had, now has, or hereafter can, shall, or may have" against the City "that occurred through the date" of the general release, except as indicated in the claim exclusion clause. This clause, in bold and all caps, directed plaintiff to "[l]ist below the exclusion of other actions or claims from this release" and warned that "[a]ll outstanding actions or claims are included in this release unless excluded specifically by name below." In the space below the claim exclusion clause, represented plaintiff did not list the case name and index number of his other action involving the earlier-in-time arrest (Action 1). In other words, the space was left blank. Above the signature line was a one-sentence acknowledgement, also in bold and all caps, that plaintiff had "read the foregoing release and fully understands it." Plaintiff then signed the general release and notarized his signature in the presence of counsel.
The City cross-moved to dismiss Action 1 based on the general release bar which it contended covered this then existing tort claim. To implicitly inject ambiguity so as to limit the scope of the general release to only Action 2, plaintiff proffered extrinsic evidence consisting of pre-settlement emails between the parties' counsel with attached settlement documentation, all of which contained subject matter references to Action 2. In denying the cross-motion, Supreme Court pointed to this extrinsic evidence to determine that the parties only intended to settle Action 2 and implicitly excused represented plaintiff's apparent unilateral mistake in failing to list Action 1 as being excluded from the general release bar.
Preliminarily, plaintiff makes no claim that the general release "was procured by fraud, duress, overreaching, illegality or mutual mistake" (Allen v Riese Org., Inc., 106 AD3d 514, 516 [1st Dept 2013]). Further, neither the motion court nor the [*2]dissent found textural ambiguities with any of the operative terms of the general release.
Generally, "a general release is governed by principles of contract law" (Gyabaah v Rivlab Transp. Corp., 102 AD3d 451, 451 [1st Dept 2013] [internal quotation marks omitted], affd 22 NY3d 1018 [2013]). "[A] valid release which is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced as a private agreement between parties" (Skluth v United Merchants & Mfrs., 163 AD2d 104, 106 [1st Dept 1990], quoting Appel v Ford Motor Co., 111 AD2d 731, 732 [2d Dept 1985]), and "bars an action on any cause of action arising prior to its execution" (see Hack v United Capital Corp., 247 AD2d 300, 301 [1st Dept 1998], quoting Mergler v Crystal Props. Assoc., 179 AD2d 177, 178 [1st Dept 1992]). A general release bar will not only cover any and all claims "between the releasor and releasees which had, by that time [the release is executed], actually ripened into litigation, but to all such issues which might then have been adjudicated as a result of pre-existent controversies" (Broyhill Furniture Indus., Inc. v Hudson Furniture Galleries, LLC, 61 AD3d 554, 555 [1st Dept 2009] [internal quotation marks omitted]).
Like any contract, a release must be "read as a whole to determine its purpose and intent," and extrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous (W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162 [1990] ["before looking to evidence of what was in the parties' minds, a court must give due weight to what was in their contract"]). "A contract is unambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion" (Greenfield v Philles Records, 98 NY2d 562, 569 [2002] [internal quotation marks omitted]). "More to the point, an ambiguity never arises out of what is not written at all, but only out of what was written so blindly and imperfectly that its meaning is doubtful" (Donohue v Cuomo, 38 NY3d 1, 13 [2022] [internal quotation marks omitted]).
Here, there was nothing surreptitious about the City sensibly filling in plaintiff's name as the releasor, the case name and the index number referrable to Action 2, in the general release to identify the specific matter being settled. What followed are standard, boiler-plate operative terms of this general release, namely, a broadly worded waiver provision and a claim exclusion clause, both of which are clear and unambiguous. Thus, there was no legal basis for the motion court to use any extrinsic evidence, discern an unfounded ambiguity therefrom and ultimately surmise the parties' intent to limit the scope of the general release to Action 2 (see Bernard v Sayegh, 104 AD3d 600, 600 [1st Dept 2013]).
Further, the general release contains no language limiting its scope to the [*3]arrest or circumstances of Action 2 (see Ortiz v City of New York, 127 AD3d 671, 671 [1st Dept 2015]). Contrary to the dissent's view, our reliance on Ortiz is not misplaced, as the factual dissimilarity the dissent highlights between Ortiz and this case is of no moment. Ortiz is on point because it involved a broad release, like the general release here, which "contained no limiting language from which it could be inferred that it was only meant to apply to . . . [Action 2]" (id.). Moreover, "even were we to consider . . . [extrinsic evidence] outside the four corners of the [g]eneral [r]elease, we conclude that it do[es] not narrow the broad terms of that document" (see Mateo v Carinha, 799 Fed Appx 51, 53-54 [2d Cir 2020] [citing Ortiz with approval and involving a plaintiff relying on virtually identical extrinsic evidence and release]).
Finally, the record established that the settlement of Action 2 was an arms-length transaction between represented parties and the negotiation process was a typical one. Common sense dictates that the parties would be protecting their own interests during this process. Under these circumstances, the City would never have any legal or ethical obligation to advise a represented plaintiff how to complete a general release which is clear and unambiguous on its face. Since represented plaintiff failed to exclude Action 1 from the general release, Action 1 is barred by the general release executed in settlement of Action 2.
All concur except Mendez, J. and Rodriguez, J., who dissent in a memorandum by Mendez, J. as follows:
MENDEZ, J. dissenting.
In my opinion, on the facts of this case, Supreme Court's order, which denied defendant's cross-motion for summary judgment dismissing the complaint, should be affirmed.
Plaintiff Johnte Smith brought two separate actions against the City of New York, alleging that he was falsely arrested, wrongfully imprisoned, and maliciously prosecuted. The allegations stem from plaintiff's arrests on two separate occasions by the New York City Police Department (NYPD) and from the events that followed,
In the first action under Index No. 807276/2021E, plaintiff sought to recover damages for false arrest and malicious prosecution due to an arrest that occurred in Bronx County on May 5, 2020. In the second action filed under Index No. 801965/2021E, plaintiff and an individual named Sheldon Moore sought to recover damages for false arrest and malicious prosecution due to an arrest that occurred in Bronx County on May 19, 2020. In that action the same attorney represented both plaintiff and Moore.
The City Law Department assigned each action a separate law department number — the second action bearing number 2021-005234 and the first bearing number 2021-009273 — and served an answer to each complaint. After filing the answer in the second action, that action was scheduled for a settlement conference on April 4, 2022 with the court. Although the matter did not settle at [*4]that court conference the parties continued settlement discussions and ultimately reached a settlement in the second action. At no time during these settlement discussions was there a mention of settling the first action.
On May 23, 2022, a verbal offer to settle for a total of $60,000 was extended to counsel for plaintiff and Moore, which each plaintiff accepted. On the same date, their attorney received a confirmation email, with a bolded subject line reading: "Settlement confirmed — Johnte Smith ($30,000)/Sheldon Moore ($30,000) — 801965/2021 — P's counsel." Within minutes, plaintiff's counsel was sent another email containing closing papers with a bolded subject line reading: "Closing Papers — Settlement Confirmed — Settlement Confirmed — Johnte Smith ($30,000)/Sheldon Moore ($30,000) - - NYPD PI Bronx." The email stated in bold, "THIS E-MAIL RELATES ONLY TO SETTLEMENT OF THE ABOVE SUBJECT MATTER." The email further instructed plaintiff's attorney to ensure that the settlement and stipulation of discontinuance matched the caption of the case being settled, which all matched the second action.
The closing papers included a general release identifying the case being settled. This general release contained the second action's caption, index number, and law department number. It contained general release language and an exclusions section which stated, in bold, "ALL OUTSTANDING ACTIONS OR CLAIMS ARE INCLUDED IN THIS RELEASE UNLESS EXCLUDED SPECIFICALLY BY NAME BELOW." Plaintiff's attorney did not list the first action in the space provided in that section.
Plaintiff filed a motion to amend the pleadings in the first action. The city cross-moved for summary judgment dismissing the complaint based on the general release. Supreme Court denied the City's cross-motion for summary judgment, reasoning that (1) it was undisputed that all the communications regarding a settlement involved only the second action; and (2) the email correspondence containing the settlement documents and closing papers stated that the documents related only to the above-stated subject matter, which was the second action. Thus, the court concluded that neither party intended to settle both actions, and that plaintiff certainly did not intend to dispose of the first.
Generally, when the plain language of a general release is unambiguous, it must be construed according to its clear terms; however, "a release may not be read to cover matters which the parties did not desire or intend to dispose of" (Cahill v Regan, 5 NY2d 292, 299 [1959]; Morales v Solomon Mgt. Co., LLC, 38 AD3d 381, 382 [2007]). To ascertain the intent of the parties that settled a case, courts look to the settlement agreement, the release, and the stipulation of discontinuance (see e.g. Lexington Ins. Co. v. Combustion Eng'g., 264 AD2d 319, 321 [1st Dept 1999]; Estate of Spitz v Pokoik, 83 AD3d 505 [1st Dept 2011]), all of which, in this case, indicate that the parties only intended to settle and dispose [*5]of the second action and did not intend to settle the first.
The settlement agreement, the general release, and the stipulation of discontinuance explicitly mentioned the second action only, by use of the case caption, index number, and law department number, without any mention of the first action. Furthermore, their intent to settle only the second action can be inferred from the parties' communications which only explicitly mentioned and referenced the second action and not the first.
The City's insertion of a single sentence in the general release, which was one of many documents in the package of closing papers, allows it to surreptitiously dispose of plaintiff's viable first action. Allowing defendants to unilaterally dispose of a viable action in this manner sets a bad precedent, allows parties to engage in unfair settlement practices, and is unfair and unjust. Defendants should not be permitted, and to an extent even incentivized, to lead a plaintiff into believing that they are settling a particular action, when their aim is, unbeknown to plaintiff, to dispose of every other claim a plaintiff has asserted in a separate action.
Plaintiff commenced two separate and distinct actions arising out of completely different incidents that occurred on two separate dates. He is not bringing two actions from one single incident (see Ortiz v City of New York, 127 AD3d 671 [1st Dept 2015]). Ortiz and similar cases that have allowed the release of an action when a party commences multiple actions arising from a single incident are distinguishable from the facts of this case.
The meaning and extent of coverage of a release depends upon the controversy being settled and upon the purpose for which a release was given (see Linn v New York Downtown Hosp., 139 AD3d 574, 575 [1st Dept 2016]). This principle applies here, because the parties explicitly determined the extent and purpose of the release by agreeing to settle the second action only and repeatedly referring to it in every settlement document.
The City does not dispute that the parties discussed and intended to settle only the second action. In fact, they state in their reply brief, "That the parties engaged in discussions in connection with only the second false-arrest action made perfect sense: that was the action the parties had elected to settle. But the fact that each side agrees they are meeting to settle a specific action hardly absolves a counseled party of their duty to carefully read through any contract they sign at such a meeting." This is telling of the City's intent and ulterior motive. Although never bringing it to plaintiff's attention, they intended to dispose of the first action without plaintiff's knowledge. This is also made strikingly clear in the City's reply brief as they state, "There is no language in the operative terms of the release here to indicate it would not cover the false-arrest claim Smith seeks to assert in this action."
The City's standard places the [*6]burden on plaintiffs to state that they did not intend to settle and dispose of other cases when agreeing to settle entirely separate and distinct matters; this is unreasonable. If a defendant wants to settle an action other than the action they agreed to settle, then their general release — in consonance with their settlement documents — should explicitly state so in order to make the settlement process fair, and the outcome what the parties intended.
Here, the email containing the closing papers stated in all caps and bold type that it related only to the settlement of the above subject matter, which was the second action. Further, the settlement confirmation email indicated that the second action was being settled, and included its caption, index, and law department number. Moreover, the subject line of the email attaching the closing papers referenced the plaintiffs in the second action only, and the amount of money for which they each agreed to settle their claims. Most significantly, the general release included only the index and law department number of the second action and did not mention the first. Therefore, the general words of release should be limited only to the second action. There is no evidence to indicate that in settling the second action plaintiff intended to also dispose of the first.
Finally, to the extent that plaintiff's attorney made a mistake by failing to list the first action in the exclusion section of the general release, a client should not be deprived of their day in court by an attorney's inadvertent error (Chelli v Kelly Group, P.C., 63 AD3d 633-634 [1st Dept 2009]; Morales v Solomon, 38 AD3d at 382). This holds especially true where the other party cannot show prejudice and the complaint has merit (Chelli at 634). This principle must be applied here to avoid an unfair and unjust result. Accordingly, because I would affirm Supreme Court, I respectfully dissent.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 4, 2025