Shenkman v 45 Falmouth St. LLC (2025 NY Slip Op 51916(U))

[*1]

Shenkman v 45 Falmouth St. LLC

2025 NY Slip Op 51916(U)

Decided on December 7, 2025

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 7, 2025
Supreme Court, Kings County

Yasemin Shenkman, Plaintiff,

against
45 Falmouth Street LLC, and New York SMSA Limited Partnership d/b/a Verizon Wireless, Defendants.

Index No. 507765/2021

Law Office of Michael S. Lamonsoff, PLLC, New York City (Brendan O'Meara of counsel), for plaintiff.
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, New York City (Kyle Hall of counsel), for defendant New York SMSA Limited Partnership d/b/a Verizon Wireless.
Russo & Gould, LLP, New York City (Darrel Thompson of counsel), for defendant 45 Falmouth Street LLC.

Aaron D. Maslow, J.

The following numbered papers (NYSCEF Document Numbers) were used on this motion:
In support of motion by movant New York SMSA Limited Partnership d/b/a Verizon Wireless: 113-135.
In opposition by plaintiff: 136-139.
In opposition by defendant 45 Falmouth Street LLC: 140—144, 149.
In reply by movant New York SMSA Limited Partnership d/b/a Verizon Wireless: 151-156.
Upon the foregoing papers and having heard oral argument on the record on November 21, 2025, the within motion is determined as follows.
Background
It is alleged that on November 17, 2020, at approximately 7:00 a.m., Plaintiff was entering the bathroom of her apartment at 45 Falmouth Street, Apartment XX, Brooklyn, New York 11235, where she had lived for 35 years,[FN1]
when the bathroom ceiling collapsed, causing her to fall and sustain injuries (see NY St Cts Elec Filing [NYSCEF] Doc Nos. 115 ¶¶ 1-7; 122). [*2]Plaintiff commenced this action on April 1, 2021, alleging negligent installation, maintenance, inspection, or repair of the ceiling and/or the roof above her apartment (see NYSCEF Doc No. 114 ¶¶ 6, 10).
At her deposition, Plaintiff testified that she had complained four to five times to building management or the building superintendent regarding the condition of the bathroom ceiling in the weeks and months prior to the accident (see NYSCEF Doc Nos. 114 ¶¶ 25-26; 122). Plaintiff further testified that this was not the first ceiling collapse in the apartment. She stated that her ceiling had collapsed in different locations within the apartment several times over the past twenty years (see NYSCEF Doc No. 122 at 37-39). A site inspection occurred on June 25, 2025 (see NYSCEF Doc No. 114 ¶ 19-20).
Defendant Verizon moves for summary judgment pursuant to CPLR 3212, seeking dismissal of Plaintiff's complaint and all claims asserted against it, as well as dismissal of all cross-claims asserted by co-Defendant 45 Falmouth Street LLC ("Falmouth"), which Verizon asserts were barred by a June 2022 settlement and release agreement (see id. ¶ 2).

Defendant Verizon's Argument
Defendant Verizon Wireless ("Verizon") argues that summary judgment should be granted because the record establishes that Verizon neither created nor had actual or constructive notice of the condition that caused the bathroom-ceiling collapse in Plaintiff's apartment (see NYSCEF Doc No. 114 ¶ 4). Verizon contends that its rooftop installation, originally completed in 2014, was mounted to the parapet wall and did not penetrate the roof surface above Plaintiff's unit, and that no structural modifications to its equipment occurred until 2021, which was after Plaintiff's November 2020 accident (see id.). Verizon maintains that because its equipment physically could not have allowed water infiltration from the roof and, as Plaintiff testified to multiple prior ceiling collapses in the twenty years prior to Verizon's involvement with the building, Defendant Verizon could not have created the leak condition leading to the collapse of the ceiling (see NYSCEF Doc Nos. 116; 122 at 37-39).
Defendant Verizon further asserts that Plaintiff's res ipsa loquitur theory fails because Verizon did not have exclusive control over the instrumentality that allegedly caused the accident (see NYSCEF Doc No. 114 ¶ 4). Defendant points to testimony indicating that multiple telecommunication providers maintained equipment on the roof, that Verizon had no access to Plaintiff's apartment or bathroom prior to the accident, and that Falmouth's contractors had repeatedly entered the bathroom to address the moisture condition (see id.). Defendant argues that these facts defeat the exclusive-control requirement of the res ipsa loquitur doctrine, and therefore, it cannot support liability as a matter of law.
Finally, Defendant Verizon argues that all cross-claims asserted by Falmouth must be dismissed because Falmouth executed a broad settlement and release agreement in June 2022 discharging Verizon from "any and all claims, damage, demands, liability, loss, cost, expense, and causes of action" related to Verizon's installation or lease at the subject premises (see NYSCEF Doc Nos. 116; 135).[FN2]
 Defendant Verizon asserts that this release, which was executed by Falmouth's manager, Josh Landau, bars claims for common law indemnification, [*3]contribution, contractual indemnification, and breach of contract for failure to procure insurance (see NYSCEF Doc No. 115; NYSCEF Doc No. 123 at 78-79). Defendant Verizon maintains that because the release expressly encompasses claims connected to the 2014 lease governing Verizon's rooftop installation, Falmouth's cross-claims fail as a matter of law.

Plaintiff's Opposition
Plaintiff opposes Defendant Verizon's motion, arguing that Verizon has failed to eliminate triable issues of fact concerning whether its rooftop construction work contributed to or accelerated the ceiling collapse. Plaintiff relies on the expert engineer report of Robert W. Toms, P.E., who opined that the ceiling damage in Plaintiff's apartment "was at a minimum aggravated by vibration from Verizon's recent construction" and "As this collapse is reported to have occurred during the period where Verizon Wireless installed new Beta Sector bracing to the roof east of this area, vibrations from Verizon's construction may have aggravated this compromised ceiling condition thus hastening its failure" (NYSCEF Doc No. 136 ¶ 5). Plaintiff asserts that this directly contradicts Defendant Verizon's claims that no work impacting the roof or surrounding structure occurred prior to the accident.
Plaintiff disputes Verizon's statement of material fact asserting that Plaintiff never complained to Verizon about the water condition, contending instead that Plaintiff personally spoke with Verizon workers on the roof who confirmed they were installing "phone towers" with drills and that the work caused shaking in her apartment (NYSCEF Doc No. 137 ¶ 8; see NYSCEF Doc No. 122 at 107-108). Plaintiff also disputes Verizon's assertion that no modification work occurred until 2021, citing Toms' deposition testimony that Verizon had work "ongoing around November 2020," as well as his expert report linking the timing of Verizon's construction activities to the ceiling collapse (NYSCEF Doc No. 137 ¶ 15; see NYSCEF Doc No. 125 at 47).
Plaintiff further argues that Verizon's reliance on Department of Buildings records does not resolve whether Verizon performed work before February 2021, asserting that Toms initially testified that construction activity occurred around the time of the accident and that Verizon's technicians were seen on the roof one to three weeks beforehand (see NYSCEF Doc Nos. 137 ¶ 15; 138 ¶¶ 20-22). Plaintiff also highlights that Toms was unable to recall whether he conducted any post-installation inspections after 2014-2015 or the specifics of "minor issues" referenced in his earlier reports, which leaves open the possibility that the initial installation or subsequent activities involved roof penetrations or structural disturbances above Plaintiff's apartment (see id. ¶¶ 23-25; NYSCEF Doc No. 125 at 56-57, 72).
Plaintiff maintains that the photographic evidence Toms reviewed depicting darkened materials, removed ceiling sections, and staining supports an inference of moisture infiltration originating from the roof, which contradicts Defendant Verizon's expert's conclusion that no mechanism existed for water entry (see NYSCEF Doc No. 138 ¶¶ 23-24). Plaintiff argues that these inconsistencies between Verizon's witnesses and its expert prevent a determination that, as a matter of law, Verizon did not contribute to the collapse (see id. ¶¶ 11-13).
Plaintiff further contends that Defendant Verizon has failed to satisfy its initial burden as the moving party in a premises liability summary judgment motion because Verizon did not present evidence establishing when the area above Plaintiff's apartment was last inspected, nor has it ruled out that work performed shortly before the collapse interfered with the roof structure. Plaintiff points to her deposition testimony describing ongoing roof work, substantial noise and vibrations, and direct conversations with workers confirming that they were installing towers [*4]above her bathroom, bedroom, and living room in the days and weeks preceding the collapse (see NYSCEF Doc Nos. 138 ¶¶ 13, 20—22; 122 at 104—110).[FN3]

With respect to res ipsa loquitur, Plaintiff argues that Defendant Verizon's claim on non-exclusive control is premature because the evidence, particularly Plaintiff's testimony and the timing of the construction activities, creates issues of fact as to whether Verizon exercised sufficient control over its rooftop installation area during the period when the collapse occurred. Plaintiff contends that she did not have access to the roof and only reached the area to complain about excessive pounding and vibrations caused by workers, whom she believed to be Verizon technicians (see NYSCEF Doc No. 138 ¶¶ 38—41; NYSCEF Doc No. 122 at 104-105). Plaintiff maintains that this testimony, coupled with Toms' statements regarding contemporaneous construction work, raises questions of fact as to whether Defendant Verizon maintained operational control over the installation activities that may have precipitated the collapse.
Finally, Plaintiff argues that because Defendant Verizon has not eliminated triable issues as to its own negligence, any request for dismissal of Falmouth's indemnification claims is premature. Plaintiff asserts that indemnification cannot be granted where factual issues remain as to the movant's negligence, citing to Perri v Gilbert Johnson Enterprises, LTD. (14 AD3d 681, 684-685 [2d Dept 2005]) and Cuevas v City of New York (32 AD3d 372, 374 [1st Dept 2006]). Plaintiff does not take a substantive position on the allocation of fault between Defendants but asserts that unresolved factual disputes preclude the Court from determining the indemnification issues as a matter of law (see NYSCEF Doc No. 138 ¶ 42).

Defendant 45 Falmouth Street LLC's Opposition
Co-Defendant Falmouth opposes Verizon's motion, arguing that Verizon's submissions ignore critical evidence establishing that Plaintiff repeatedly complained to Verizon workers about the severe and constant vibrations caused by their rooftop activities in the weeks leading up to the ceiling collapse (see NYSCEF Doc Nos. 140 ¶¶ 6-7; 122 at 104-105). Falmouth asserts that Verizon's motion does not address these allegations of vibration-related damage despite Plaintiff identifying them as a potential cause of the collapse (see NYSCEF Doc No. 140 ¶ 9).
Falmouth challenges Verizon's reliance on Edward Simpson's affidavit, noting that Simpson only stated it was "his understanding" that no complaints had been received regarding leaks or water infiltration, but did not address vibration complaints, even though Plaintiff testified that she complained directly to Verizon workers (see id. ¶ 11). Defendant further argues that the release indicates that roof damages were reported to Verizon at some point, but the release does not specify when such damage occurred, therefore leaving open the possibility that Verizon received complaints prior to the collapse, which Falmouth contends undermines Simpson's assertion that Verizon was unaware of roof-related issues (see id.). 
Co-Defendant Falmouth further argues that documentary evidence, specifically MTM's [*5]2014 design documents, contradicts Verizon's claim that the 2014 installation did not penetrate the roof (see id. ¶ 12). Specifically, Falmouth contends that the design documents, which indicate Verizon intended to install a metal pitch pocket secured directly to the wood roof framing through screws and plates in four locations, demonstrate that roof penetrations existed long before the accident and therefore refutes Verizon's claim that its equipment was exclusively mounted to the parapet (see id.¶ 13).
Co-Defendant Falmouth also relies on the testimony of Verizon's own engineer, Robert Toms, who is the owner of MTM Designs, who stated in his March 2022 report that the ceiling damage was "at a minimum aggravated by vibration from Verizon's recent construction" (id. ¶ 14). Falmouth argues that this is consistent with Plaintiff's testimony describing substantial pounding, drilling, and shaking from rooftop work in the weeks prior to the collapse (see id. ¶ 15). Falmouth contends that their expert, Louis R. Silver, further supports this position through his testimony opining that vibrations of the sort Plaintiff described are severe enough to cause or at the very least contribute to rooftop damage as well as damage to the ceilings in the apartments below the roof (see id. ¶ 16). Defendant notes that photographs referenced in MTM's 2022 report show cracks in the walls and interior damage constituent with vibration-related damage (see id. ¶ 14).
Co-Defendant Falmouth contends Verizon's prior rooftop activities, including Verizon's 2014 construction work, subsequent maintenance, and NYC DOB-approved renovation plans dated September 28, 2020, establish ongoing rooftop penetration and construction activity above Plaintiff's apartment (see id. ¶ 18). Defendant asserts that although Verizon argues they did not begin work after the September 28, 2020 DOB approval until 2021, they've offered no work records, times sheets, or documentation verifying this claim, and that Verizon's own expert Jaime Silver, P.E. identified roof braces anchored through the roof that appear in September 2014 plans and April 2015 aerial imagery, contradicting Verizon's account (see id. ¶¶ 19-22).
Co-Defendant also argues that Silva's expert report should not be credited because Silva's inspection occurred in 2025, almost five years after the accident, and that Silva failed to review the complete MTM 2014 design plans showing roof penetrations and instead bases his understanding on later documents, like the pleadings, bills of particulars, deposition transcripts, DOB records, the March 21, 2022 Building Evaluation Report prepared by MTM Designs Group, and unauthenticated photos of the roof taken in July 2020 (see id. ¶¶ 22—27). Co-Defendant contends that this is contrary to precedent mandating that "[a]n expert may not reach a conclusion by assuming material facts not supported by the evidence, and may not guess or speculate in drawing a conclusion," citing to Cassano v Hagstrom (5 NY2d 643, 646 [1959]) and Hambsch v New York City Tr. Auth. (63 NY2d 723, 725 [1984]). Co-Defendant asserts that Silva's "understanding" that the 2014 installation did not penetrate the roof is unsupported and that he did not address the vibration-related mechanism that Verizon's own engineer, Toms, acknowledged, thereby raising a triable issue of fact sufficient to deny Verizon's motion (see NYSCEF Doc No. 140 ¶¶ 26-30).
Co-Defendant Falmouth further argues that Verizon's motion fails on the issue of the release (see id. ¶ 32). Defendant contends that the release was signed in 2022, two years after the ceiling collapse and more than a year after Falmouth and Verizon had answered the complaint, and that the document does not reference the existing litigation or cross-claims (see id. ¶¶ 33-35). Co-Defendant Falmouth contends that the intentions of the parties are disputed as Falmouth's representative, Mr. Landau, attests that he did understand that the release applied to [*6]claims in this lawsuit and that his purpose was simply to allow Verizon to resume rooftop work (see id. ¶¶ 37—40). Additionally, Co-Defendant argues that enforcement of the release to bar indemnification and contribution cross-claims arising from the ceiling collapse would violate public policy, especially where Verizon was represented by counsel during the negotiation and Falmouth was not (see id. ¶¶ 43-44).
Finally, Co-Defendant Falmouth disputes numerous factual assertions in Verizon's statement of material facts, including whether the ceiling fell upon Plaintiff, whether Plaintiff made prior complaints to the building super, whether the super observed leaks, whether DOB records confirm the absence of pre-collapse rooftop roof, and whether Verizon's witnesses accurately described the condition of the bathroom ceiling prior to the collapse (see NYSCEF Doc No. 143 ¶¶ 7-20). Co-Defendant asserts that these inconsistencies support the existence of triable issues of fact regarding Verizon's potential role in creating, aggravating, or contributing to the condition that caused the collapse.

Defendant Verizon's Reply
In reply, Verizon argues that Plaintiff and co-Defendant Falmouth mischaracterize the evidence (see NYSCEF Doc No. 151 ¶ 5). Defendant maintains that Toms' March 21, 2022 Building Evaluation Report, and its references to vibration-related aggravation, concerned a subsequent roof and ceiling collapse in late November 2021, not the November 2020 bathroom ceiling collapse (see id.). Defendant cites extensive deposition testimony in which Toms repeatedly stated that he was unaware of the November 2020 incident until his 2024 deposition and that his inspection pertained solely to the 2021 collapse (see id. ¶¶ 12—13; see NYSCEF Doc Nos. 131; 125 at 51, lines 17-25).
Defendant Verizon asserts that that the Department of Buildings records, Simpson's affidavit, and Toms' corrected testimony [FN4]
establish that no Verizon construction work occurred at the building between 2014 and 2021 (see NYSCEF Doc No. 151 ¶ 6). Verizon maintains that Plaintiff's testimony regarding rooftop workers is speculative, internally inconsistent, and contradicted by the documentary evidence (see id. ¶ 25).
Regarding notice, Defendant Verizon argues that Plaintiff admitted that she never reported the leaks to Verizon and that under Vella v UBM Holdings, Inc. (216 AD3d 1051 [2d Dept 2023]), complaints about noise or vibrations cannot constitute constructive notice of a leak (see id. ¶¶ 7, 26-28, 33). Verizon reiterates that it lacked access to Plaintiff's apartment and, therefore, could not have inspected or observed any interior condition (see id. ¶¶ 29—32, 34).
Regarding the roof penetrations, Defendant argues that the angle bracing relied upon by co-Defendant Falmouth pre-dated Verizon's 2014 installation, as shown by 2012 satellite imagery (see NYSCEF Doc Nos. 151 ¶¶ 8, 38; 131). Defendant Verizon maintains that all of its equipment in the plans was labeled as "proposed," whereas the bracing is unlabeled and designated "existing," and therefore, is unrelated to Verizon's installation (see NYSCEF Doc Nos. 151 ¶ 39-41; 132 at 4).
Finally, Defendant argues that the release's broad language is clear and unambiguous (see NYSCEF Doc No. 151 ¶ 9). Defendant asserts that under Northgate Elec. Corp. v Barr & Barr (61 AD3d 467 [1st Dept 2009]) and Alvarez v Amicucci (82 AD3d 687 [2d Dept 2011]), parol evidence, including Falmouth's principal's affidavit, cannot vary the terms of a complete and unambiguous release absent fraud, duress, or mistake, which Defendant contends Falmouth has not shown (NYSCEF Doc No. 151 ¶¶ 44—47).

Legal Standard
Summary judgment is a drastic remedy that should be granted only if no triable issues of fact exist and the movant is entitled to judgment as a matter of law (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; Andre v Pomeroy, 35 NY2d 361, 364 [1974]). The party moving for summary judgment must present a prima facie case of entitlement to judgment as a matter of law, tendering sufficient evidence in admissible form demonstrating the absence of material issues of fact, and the failure to make such a showing requires denial of the motion, regardless of the sufficiency of the opposing papers (see CPLR 3212 [b]; Smalls v AJI Industries, Inc., 10 NY3d 733 [2008]; Alvarez, 68 NY2d at 324). Once a prima facie showing has been made, however, the burden shifts to the nonmoving party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact that require a trial for resolution or tender an acceptable excuse for the failure to do so; mere expressions of hope are insufficient to raise a genuine issue of fact (see Zuckerman v City of New York, 49 NY2d 557 [1980]). If there is any doubt as to the existence of a triable fact, the motion for summary judgment must be denied (see Rotuba Extruders, Inc. v Ceppos, 46 NY2d 223, 231 [1978]).

Discussion
Here, Defendant Verizon has not demonstrated entitlement to summary judgment. Verizon argues that it could not have created or contributed to the ceiling collapse because its equipment did not penetrate the roof surface above Plaintiff's apartment until 2021, after the subject accident. However, Plaintiff and co-Defendant Falmouth submit evidence that directly contradicts Verizon's position, including MTM's 2014 documents indicating roof-penetrating pitch pockets, testimony from Toms suggesting construction activity in late 2020, photographic evidence of roof-level disturbances, and Plaintiff's testimony regarding drilling and vibrations. These submissions create triable issues of fact regarding whether Verizon's rooftop activities occurred before the collapse and whether such work may have aggravated a compromised ceiling.
Under Vella v UBM Holdings, Inc. (216 AD3d 1051 [2d Dept 2023]), a premises liability defendant — here Verizon — must demonstrate that it did not create the condition and lacked actual or constructive notice. However, Vella also requires a showing that the defendant had no duty to inspect or maintain the area, which may be contested depending on Verizon's contractual obligations under the 2014 lease (see id.). As Verizon's motion relies primarily on its own affidavits and DOB filings to establish that its equipment did not penetrate the roof, its work post-dated the accident, and it had no duty to inspect the interior apartment, Verizon does not affirmatively eliminate all triable issues of fact and, therefore, it has not met its prima facie burden.
Plaintiff and Verizon both cite relevant res ipsa loquitur authorities. Res ipsa loquitur requires exclusive control of the instrumentality (see Ebanks v NYCTA, 70 NY2d 621 [1987]; Corcoran v Banner Super Mkt., Inc., 19 NY2d 425 [1967]), and Plaintiff asserts that exclusive [*7]control does not require eliminating all other possible causes, but only that their likelihood be reduced (see Dermatossian v NYCTA, 67 NY2d 219, 227—28 [1986]; Herbst v Lakewood Shores, 112 AD3d 1373, 1374-75 [4th Dept 2013]). Here, Verizon's evidence that multiple telecommunication carriers occupied the roof and that Verizon lacked access to the apartment strengthens its position that exclusive control cannot be established. However, to the extent that the collapse resulted from conditions inside the apartment ceiling, the applicability of res ipsa may depend on whether the ceiling itself is an "instrumentality" capable of exclusive control by any of the defendants. This, coupled with conflicting testimony on the timing of construction work, raise triable issues of fact precluding a finding of summary judgment.
Further, regarding notice, Verizon has not eliminated issues of fact. Although Verizon contends that it lacked notice because Plaintiff never reported the leaks to Verizon, Plaintiff testified that she personally complained to Verizon workers about the vibrations and pounding above her bathroom immediately before the collapse. Further, Falmouth disputes Verizon's claim that the roof had not generated prior complaints. Whether these noise and vibrations complaints are relevant to constructive notice depends on whether the trier of fact can credit Plaintiff's testimony and whether the rooftop activities are found to be causally connected to the ceiling collapse. Therefore, this contradictory evidence leaves a question of fact as to whether Verizon created or contributed to the condition.
New York courts enforce clear and unambiguous releases (see Wells v Shearson Lehman/American Express, 72 NY2d 11, 19 [1988]; Broyhill Furniture Indus., Inc. v Hudson Furniture Galleries, LLC, 61 AD3d 554 [1st Dept 2009]). Falmouth argues the 2022 release concerned discrete roof-repair negotiations unrelated to litigation while Verizon argues that its broad language mandates dismissal. Under Kaminsky v Gamache (298 AD2d 361, 361—62 [2d Dept 2002]), "if the recitals or circumstances show that the release was intended to apply only to particular claims, the instrument will be limited to those matters alone." Falmouth argues that a release should not bar claims not contemplated by the parties, particularly where the bargaining power between the parties is unequal (see Tarantola v Williams, 48 AD2d 552 [2d Dept 1975]; Cahill v Regan, 5 NY2d 292 [1959]). At this stage, whether the 2022 release bars Falmouth's cross-claims is a question for the trier of fact as factual disputes remain regarding the scope and intent of the release, including whether the release extends to claims of negligent maintenance or water infiltration, which depends on how "relating to Verizon's installation" is construed. Therefore, the remaining disputes preclude summary judgment on Falmouth's cross-claims.

Conclusion
Accordingly, it is hereby ORDERED as follows:
(1) That branch of Defendant Verizon's motion for summary judgment dismissing Plaintiff's claims is DENIED.
(2) That branch of Defendant Verizon's motion for summary judgment dismissing all cross-claims asserted by co-Defendant 45 Falmouth Street is DENIED.

Footnotes

Footnote 1:It was 35 years at the time of her deposition on January 26, 2023.

Footnote 2:Note that subsequent mentions of the release agreement (NYSCEF Doc No. 135) list the date as July 9, 2025, but based on the exhibit itself it appears that it was dated June 9, 2022, although co-Defendant Falmouth agreed and signed the document on July 11, 2022.

Footnote 3:Plaintiff cites Giantomaso v T. Weiss Realty Corp. (142 AD3d 950 [2d Dept 2016]), and other slip-and-fall notice cases to argue that Verizon failed to show when the roof area was last inspected. The analogy is imperfect, however, since Verizon here is denying any duty to inspect the roof structure beyond its equipment area. Plaintiff also cites Pena v Pep Boys (216 AD3d 809 [2d Dept 2023]) for the rule that general testimony about customary inspection practices is insufficient to establish lack of notice. Again, this is relevant if Verizon is found to have had a duty to inspect the area above Plaintiff's apartment, which Verizon denies.

Footnote 4:Defendant Verizon contends that although Toms originally testified that Verizon had work going on at the building around November of 2020, he later retracted this statement and corrected himself multiple times at his deposition, specifying that Verizon's modification work after its initial 2014 install began in 2021, after the Plaintiff's accident (see NYSCEF Doc No. 151 ¶ 18).